**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos ARMENDARIZ–MATA,**
**Defendant–Appellant.**

**Nos. 89–5502, 89–5609.**

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1991.

Steven L. Woolard, Fort Stockton, Tex., Sylvan Lang, Plunkett, Gibson & Allen (Court-appointed), San Antonio, Tex., for defendant-appellant.

Solomon L. Wisenberg, LeRoy Morgan Jahn, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JONES and DUHÉ, Circuit Judges, and WALTER *, District Judge.

WALTER, District Judge:

\* \* \* \* \* \*

Defendant-appellant Carlos Armendariz–Mata, citing nine issues for our review, seeks reversal of his conviction for violations of 21 U.S.C. § 846, new trial, or remand for re-sentencing. We affirm.

---

* District Judge of the Western District of Louisiana, sitting by designation.

## BACKGROUND

Appellant participated in several weeks of discussions with a confidential informant, Manual Beltran (Beltran), who was posing as a cocaine supplier. Appellant claims that over the course of their discussions, Beltran "bragged" about his extensive criminal activities ranging from drug trafficking to murder, that Beltran contacted him at his home in order to convince him to participate in a large-scale drug deal, and that appellant went along with Beltran's suggestions only out of fear.

On May 14, 1988, shortly after midnight, appellant checked into the Holiday Inn Riverwalk Hotel for one night and paid cash for two rooms. Appellant then met with Beltran and a second undercover agent, Hernandez, at a different Holiday Inn.

At this meeting, which was conducted in Spanish, recorded, and later translated into English by DEA agent Hernandez, appellant agreed to purchase fifty kilograms of cocaine from Beltran and Hernandez for $500,000.00. Appellant told the agents that four associates were waiting for him at his hotel where they had a large amount of cash. Appellant also indicated that his associates intended to distribute the drugs in a large east coast city.

Hernandez and Beltran demanded to see the money before they delivered the cocaine. They convinced appellant to return to their hotel with the cash an hour later.

When appellant arrived with the money, the sting operation was carried out as planned, and appellant was arrested within five feet of the open door of his vehicle. The arresting agents saw a partially opened briefcase on the back seat. The agents seized the briefcase; appellant was searched and booked; his car was seized, impounded, and inventoried. The inventory included over $120,000.00 dollars in cash and a nine millimeter automatic weapon.

Appellant was indicted for attempted possession of cocaine in excess of five kilo-grams with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. After certain pretrial motions to suppress were denied, appellant was convicted by a jury and sentenced under Federal Guidelines. This appeal followed.[1]

## I.

■ First, appellant attacks the validity of his arrest, which was made without a warrant. Appellant acknowledges an officer's authority to arrest a suspect without a warrant if probable cause exists to believe the suspect has committed, or is committing a crime; however, appellant claims that the government failed to show probable cause in this case.

The government relies on *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), which established that officers may base probable cause upon information relayed to them by fellow officers. *Hensley* applies to this case; although the arresting officers were not directly involved in the negotiations with appellant, they were entitled to rely upon the information conveyed to them by the other agents.[2] The agents' actions in arresting appellant without a warrant were proper.

## II.

Next, appellant attacks the trial court's denial of his motion to suppress the evidence obtained at the time of his arrest. Specifically, appellant contends that the evidence was seized in violation of the Fourth Amendment to the United States Constitution because the arresting officers should have procured a search warrant before searching his vehicle.

■ The government justifies the search and seizures on several grounds. All have merit. The government argues that the seizure of the notebook was permissible as a search incident to a lawful arrest. We agree. *United States v. Robinson*, 414 U.S. 218, 325, 94 S.Ct. 467, 477,

---

1. The appeal also addressed appellant's erroneously filed motion under Fed.R.Civ.Proc. 60(b), which was treated as a motion under Fed. R.Crim.Proc. 33.

2. The agents involved in the negotiations had a pre-arranged signal, removing sunglasses, to summon the arresting officers.

38 L.Ed.2d 427 (1973). As to the briefcase and cash, the government correctly points out that a warrant is not needed if officers have probable cause to believe an automobile contains contraband or evidence from a crime. *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). The government also points out that if officers have probable cause as to the entire automobile, then they may search any containers found within the vehicle where the contraband or evidence might reasonably be found. *United States v. Ross*, 456 U.S. 798, 823–825, 102 S.Ct. 2157, 2172–2173, 72 L.Ed.2d 572 (1982). Finally, because appellant was standing about five feet away from an open door to his automobile, the government correctly contends that a search of the briefcase was authorized because it was within appellant's "grab area" and was therefore seizable under *United States v. Johnson*, 846 F.2d 279, 282 (5th Cir.1988), *cert. denied*, 488 U.S. 995, 109 S.Ct. 562, 102 L.Ed.2d 587 (1988).[3]

For the above reasons, we find that the district court did not err in denying the motion to suppress.

### III.

Appellant claims that the evidence was insufficient to support his conviction because the government failed to prove that he understood the terms of the deal, or that he intended to consummate the deal. He further claims that because he never requested, saw, or actually possessed any drugs, his conduct did not constitute a "substantial step" towards committing the crime.

■■■ In order to prove an attempt under 21 U.S.C. §§ 841(a)(1) and 846, the government must show that appellant engaged in conduct constituting a substantial step toward completing the crime. See *United States v. August*, 835 F.2d 76, 77 (5th Cir.1987). In this case, appellant brought "drug money" to San Antonio; he met with agents at the hotel; he negotiated a drug deal; he returned to the pre-arranged spot to perfect the exchange. These actions constitute a substantial step in an attempt to possess narcotics.

Examining all of the evidence, including inferences, in the light most favorable to the prosecution, we find the evidence more than sufficient to support appellant's conviction. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

### IV.

■■■ At trial, appellant claimed entrapment. He argued that he had no predisposition to engage in any drug transaction but merely played along with Beltran out of fear, and that his previous statements about having drug "associates" and his plans to distribute drugs in a large east coast city were contrived. To prove appellant's predisposition, the government introduced evidence of the drug trafficking activities of, and appellant's association with, Miguel Traveras.[4] Appellant argues that this evidence was improperly admitted because it allowed an inference of guilt by association. F.R.E. 404(b) and *United States v. Hays*, 872 F.2d 582 (5th Cir. 1989).[5]

The government argues that Rule 404 is not applicable in the context of the entrapment defense. Because appellant placed his predisposition at issue by raising the entrapment defense, the government argues that it can refute appellant's claim that he had no predisposition.

---

**3.** We also find the automatic weapon was properly seized.

**4.** The evidence introduced by the government showed that Traveras (referred to throughout the trial transcript and appellate briefs variously as "Travarez," "Travariz," and "Tavariz") was a known and convicted drug trafficker who operated out of a large east coast city. The evidence also showed that Traveras was staying in a room near appellant's at a hotel, that appellant had paid for Traveras' first night's lodging, and that Traveras had paid for appellant's second night's lodging.

**5.** In *Hays,* this Court reversed a conviction because the trial court admitted testimony regarding the illegal activities of an unnamed co-indictee.

In *Hays*, the defendant had not placed his character in issue. In this case, appellant maintained that he had contrived his story about his drug associates, and was in San Antonio on tractor sales business. The evidence regarding Traveras tended to prove something at issue, appellant's pre-disposition to deal drugs, by showing that appellant was linked with a known drug trafficker.

## V.

 As additional evidence to rebut the entrapment defense, the government introduced the testimony of Agent Hernandez, an experienced DEA agent. Hernandez testified as to the meaning of certain "code words" he used with appellant, as well as to the significance of some of appellant's actions. Hernandez was permitted to give his expert opinion that appellant was a "knowledgeable drug trafficker."

Appellant contends that admitting this testimony was error, again arguing that it tended to convict him based solely upon his character. In support of his position, appellant offers *United States v. Newman*, 849 F.2d 156 (5th Cir.1988). In *Newman*, defendant attempted to introduce expert psychological testimony relating to defendant's predisposition to commit the crime in support of an entrapment defense. We sanctioned the use of expert testimony in the context of the entrapment defense, and held that the expert may not offer an opinion on the ultimate issue—whether defendant was in fact induced to commit the crime. Hernandez did not testify as to the ultimate issue in this case; thus, *Newman* does not apply.

We faced a similar issue in *United States v. Martinez*, 920 F.2d 930 (5th Cir. 1990) wherein a DEA agent testified that based upon the defendant's familiarity with drug trafficking terminology and methods, his desire to dictate the particulars of the transaction, and his ability to procure a large amount of cocaine readily, the agent felt Martinez was an "experienced cocaine trafficker." [6] Clearly we are bound [*Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991)] by the holding of *Martinez* and must affirm on this issue.

We are concerned with the apparent "testing the limits" of permissible conduct by the prosecutor. The introduction of Agent Hernandez's opinion was totally unnecessary in this case. The evidence of the appellant's pre-disposition to commit the offense was more than sufficient to meet the applicable standard of proof and was clear and readily understandable without further interpretation by the agent or expressing the opinion that the appellant was "a knowledgeable drug trafficker". The *Martinez* decision should be narrowly read and is limited to those instances where entrapment is raised as a defense; and caution should be used in admitting opinion testimony of this nature in future cases.[7]

## VI.

 Appellant filed a Fed.R.Civ.Proc. 60(b) motion which the district court treated as a motion for new trial under Fed. R.Crim.Proc. 33. In that motion, appellant alleged that Hernandez had erroneously transcribed the taped Spanish conversations into English and had, in effect, intro-

---

**6.** The DEA agent in the *Martinez* case was the same DEA agent as in the present case.

**7.** At oral argument in this case, the attorney for the government stated that the Western District of Texas likes "to be on the cutting edge of the law". Justice Sutherland stated the proper objective and image which the U.S. Attorney's office should portray when he wrote in 1935:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not

that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, [633,] 79 L.Ed. 1314 (1935).

duced perjured testimony. Appellant further argues that the trial court erred by not granting him a hearing on his motion.

In *United States v. Llinas*, 603 F.2d 506, 509 (5th Cir.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762 (1980), we held that when a defendant believes a translation is inaccurate, it becomes the defendant's burden to challenge the accuracy of the translation by presenting another translation. The record indicates that appellant was informed of this but chose not to present another translation. In the absence of an alternative transcript, the district court is under no obligation to rule on the accuracy of the transcript submitted by the government. See also, *United States v. Mendoza*, 574 F.2d 1373, 1378 (5th Cir.), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978).

## VII.

 Appellant contends for the first time on appeal that his attorney's failure to consult an expert witness to refute Hernandez's testimony, to challenge the authenticity of the trial transcripts, and to call Beltran to the stand to testify as his witness constituted ineffective assistance of counsel.

The general rule in our circuit is that a claim of ineffective assistance of counsel cannot be addressed on direct appeal when the claim has not been raised before the district court. See *United States v. Higdon*, 832 F.2d 312, 313 (5th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). Accordingly, we dismiss this contention.

## VIII.

Appellant also contends the trial judge committed reversible error by failing to ask prospective jurors specific questions regarding the weight they would give testimony from government agents compared to that of private citizens.

Because a trial judge has broad discretion in conducting voir dire, only an abuse of that discretion is error. If the overall conduct of voir dire protects a de-

fendant's rights, the trial court's actions will be upheld. We find the overall voir dire adequately protected the rights of appellant.

## IX.

Finally, appellant challenges the trial court's application of the sentencing guidelines. Upon reviewing the record in its entirety, we find that the trial court's actions under the guidelines were proper.

\* \* \*

As to all issues raised by Defendant, we AFFIRM.