**UNITED STATES of America,
Plaintiff–Appellee**

v.

**Leon PAPILLION, Jr., also known as
Wood, Defendant–Appellant.**

**No. 09–31023.**

United States Court of Appeals,
Fifth Circuit.

Oct. 26, 2010.

Camille Ann Domingue, Brett L. Grayson, Assistant U.S. Attorneys, U.S. Attorney's Office, Western District of Louisiana, Lafayette, LA, for Plaintiff–Appellee.

David Kelly Balfour, Lafayette, LA, for Defendant–Appellant.

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

PER CURIAM: *

Leon Papillion, Jr., appeals his conviction after a jury trial for conspiracy to possess with intent to distribute controlled substances and attempt to possess with intent to distribute Methylenedioxy Amphetamine (Ecstasy). He challenges the sufficiency of the evidence. We AFFIRM.

Because Papillion preserved his sufficiency of the evidence argument in the district court, we review it *de novo*. *See United States v. Williams*, 602 F.3d 313, 315 (5th Cir.2010). "In deciding whether the evidence was sufficient, we review all evidence in the light most favorable to the

---

verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

To prove a conspiracy to distribute a controlled substance, the Government was required to establish: (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy. *See United States v. Valdez,* 453 F.3d 252, 256–57 (5th Cir.2006). In order to prove attempt to possess Ecstasy with intent to distribute, the Government was required to prove that the defendant engaged in conduct constituting a substantial step toward completing the crime. *United States v. Armendariz–Mata,* 949 F.2d 151, 154 (5th Cir.1991).

The Government charged that Papillion and several others, organized and led by co-defendant Loveless Bell, conspired to possess various controlled substances and attempted to possess Ecstasy by participating in several home invasions of drug dealers. One such home invasion occurred on July 22, 2004, at the home of Jonathan Brown, a known drug dealer, and his girlfriend Allison Granger. Brown and Granger testified that several men wearing masks and gloves entered their home demanding the "stuff," "drugs," and "weed." The victims were previously acquainted with Papillion, and Brown called out Papillion's name during the robbery. An investigating officer testified that Brown said he recognized Papillion because of the muscles in the back of his neck and the pigment of the skin on Papillion's hands. Granger testified that having seen the perpetrator's movements and heard his voice that she believed it was Papillion. Although they initially told police that they could not identify the perpetrators, Brown and Granger later picked out Papillion from a photo array as one of the robbers and testified that they were sure Papillion was involved.

Another home invasion occurred on August 6, 2004, at the home of Derrick Mayeaux, who was Bell's partner in dealing Ecstasy. Bell testified that he instructed Papillion and another individual to break into the home to "take everything." The evidence suggested that Bell believed there was a large amount of cash and drugs in the home. Bell was present with Mayeaux's girlfriend during the robbery and pretended to be a victim as Papillion robbed them. The girlfriend testified that the intruders entered looking for drugs and money but found none. Bell testified that although some money was taken from him, which he got back, the robbers did not find the drugs that he was hoping to get. In addition to this evidence, co-defendant Kendrick Boudreaux testified that he used to rob drug dealers along with Bell, that he met Papillion in jail, and that Papillion discussed his common activities with Bell. Papillion told Boudreaux that he intended to resume his activities when he was released from jail, and he gave Boudreaux contact information for Bell.

Papillion was acquitted on separate counts concerning the July 22 and August 6 robberies and argues that the Government therefore may not rely on evidence concerning those incidents in support of his conviction. Papillion is incorrect. Consistency in the verdict is not necessary. *See United States v. Powell,* 469 U.S. 57, 62–63, 105 S.Ct. 471, 475, 83 L.Ed.2d 461 (1984); *see also United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir.1994) ("[A] not guilty verdict on one count does not establish any facts favorable to the defense for the purpose of determining the sufficiency of the evidence on the counts of conviction[.]"). We conclude that a rational jury

could find from the evidence adduced at trial that Papillion was a member of the conspiracy and attempted to obtain drugs with the intent to distribute. Although there was some inconsistency between the trial testimony and witness statements to police, inconsistencies and credibility are the province of the jury. *See United States v. Greenwood,* 974 F.2d 1449, 1458 (5th Cir.1992).

AFFIRMED.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under